

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 9, 2025**

_____
**United States Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KAREN RENE PERKINS, | § | CASE NO. 24-44209-MXM-7 |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |
| THE BANCORP BANK, N.A., | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | ADV. NO. 24-04071-MXM |
| | § | |
| KAREN RENE PERKINS, | § | |
| | § | |
| DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
[*Relates to Adv. ECF Nos. 1, 23*]

The Court conducted a trial on *Plaintiffs' Complaint to Determine Dischargeability of Debt and for Judgment*[1] (the "**Complaint**") filed by The Bancorp Bank, N.A. ("**Bancorp**") against Ms. Karen Rene Perkins ("**Ms. Perkins**"). By its Complaint, Bancorp seeks a determination that Ms.

---
[1] Adv. ECF No. 1.

Perkins's debt owed to Bancorp is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6).

The Court has reviewed and considered the Complaint, Ms. Perkins's Answer,[2] the Joint Pretrial Order,[3] the testimony of witnesses, the exhibits admitted into evidence,[4] and the arguments of counsel. The following constitutes the Court's findings of fact and conclusions of law[5] as required by Rule 52 of the Federal Rules of Civil Procedure, made applicable in this Adversary Proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

As set forth below, the Court finds and concludes that Bancorp failed to satisfy its burden to establish by a preponderance of the evidence that Ms. Perkins's debt owed to Bancorp be ordered nondischargeable under either 11 U.S.C. § 523(a)(2)(A) or 11 U.S.C. § 523(a)(6). Therefore, the Court will enter a separate judgment for Defendant, Ms. Perkins.

## I. FINDINGS OF FACT

**A.   The Bancorp Loan Agreements**

On December 17, 2015, Vault Rooms, Inc. ("***Vault Rooms***") executed a *U.S. Small Business Administration Promissory Note*[6] in the original principal balance of $855,000 (the "***SBA Note***"). Ms. Perkins unconditionally guaranteed repayment of the SBA Note by executing a *U.S. Small Business Administration Unconditional Guarantee*[7] (the "***Perkins Guaranty***").

---

[2] *Response to the Bancorp Bank, N.A. Complaint to Determine Dischargeability of Debt and for Judgment,* Adv. ECF No. 5 (the "***Answer***").

[3] *Joint Pretrial Order,* Adv. ECF No. 23 (the "***Joint Pretrial Order***"). The parties filed, but did not submit to the Court for signature and entry, their Joint Pretrial Order.

[4] Adv. ECF No. 28.

[5] Any findings of fact that should be more appropriately be characterized as conclusions of law should be regarded as such, and *vice versa*.

[6] Pl. Ex. 1.

[7] Pl. Ex. 2.

The SBA Note was secured, in part, by a *Security Agreement-Commercial*[8] and a *Patent and Trademark Security Agreement.*[9] Bancorp's security interest in Vault Rooms' personal property assets was perfected by a *UCC Financing Statement*[10] filed on December 10, 2015, with the Texas Secretary of State.

The SBA Note was further secured, in part, by a *Stock Pledge Agreement*[11] whereby Ms. Perkins and Mr. Stanton Williams, each as shareholders of "Vault, Inc. ('Corporation')"[12] pledged their stock in Corporation to Bancorp.[13] The Stock Pledge Agreement, provides, in pertinent part:

> 12. **Limitation Upon Corporate Actions**. Until this agreement terminates as aforesaid and except as otherwise authorized by Lender in writing.
>
> . . .
>
> B. **Change in Capital Structure**. Neither Corporation nor Shareholder without the prior written consent of Lender shall in any manner take any actions which would in any manner affect or change the present ownership of shares of stock of Corporation or in the capital structure of Corporation or give to any person any equitable interest in any of Corporation's shares of stock . . .[14]

**B.    Mr. Williams sells his stock in Vault Rooms, Inc. to Ms. Perkins**

In April 2016, Mr. Williams, as majority shareholder of Vault Rooms, terminated Ms. Perkins's employment and attempted to change the organizational structure of Vault Rooms. In

---

[8] Pl. Ex. 7

[9] Pl. Ex. 8.

[10] Pl. Ex. 9.

[11] Pl. Ex. 10.

[12] *Id.* Although no party raised the issue, it appears the Stock Pledge Agreement contained a scribner's error, as Ms. Perkins and Mr. Stanton Williams were shareholders of "Vault Rooms, Inc." not "Vault, Inc."

[13] *Id.*

[14] *Id.* at pgs. 3-4.

3

response, Ms. Perkins filed a lawsuit against Mr. Williams and Vault Rooms.[15] Ms. Perkins testified that she notified Mr. John Morgenthaler—a loan officer with Bancorp assigned to the Vault Rooms loan—that the Perkins-Williams Lawsuit had been filed.[16] After the Perkins-Williams Lawsuit was filed, Mr. Williams and Ms. Perkins agreed to a mediation to resolve their disputes. Ms. Perkins testified further that she invited Mr. Morgenthaler to attend the mediation, but he declined.[17] The mediation was ultimately successful, and Mr. Williams and Ms. Perkins settled their disputes and dismissed the Perkins-Williams Lawsuit on June 22, 2016.[18] As part of the settlement, Mr. Williams operated Vault Rooms and Ms. Perkins agreed to no longer be employed by Vault Rooms.[19]

Ms. Perkins testified that about a year after she ended her employment at Vault Rooms, Mr. Williams contacted her in or around July 2017 informing her that he no longer wanted to operate or own stock in Vault Rooms.[20] On August 4, 2017, Mr. Williams sold his majority interest in Vault Rooms to Ms. Perkins and she returned to operate the business.[21] At that time, Vault Rooms was in payment default of the SBA Note to Bancorp.[22] Ms. Perkins testified that she notified Bancorp that she had acquired Mr. Williams stock and she wished to resolve the pending payment default on the SBA Note. Ultimately, Bancorp agreed on a payment schedule for Vault

---

[15] Pl. Ex. 15. *Karen Perkins and Ronald Perkins, v. Stanton Williams and Vault Rooms, Inc.,* Cause No. 017-285553-16, pending in the 17th Judicial District Court, Tarrant County, Texas (the "**Perkins-Williams Lawsuit**").

[16] Perkins testimony at 10:23:30 thru 10:23:58.

[17] *Id.; see also* Perkins testimony at 10:50:00 thru 10:51:05.

[18] Pl. Ex. 17.

[19] Perkins testimony at 10:26:10 thru 10:26:47. Ms. Perkins testified that after she left Vault Rooms, she began working for Fort Worth Mayer Betsy Price.

[20] Perkins testimony at 10:26:57 thru 10:27:41.

[21] *Id. See also* Adv. ECF No. 23, pg. 4 at ¶ 11.

[22] Perkins testimony at 10:27:30 thru 10:27:42.

Rooms to cure its payment default on the SBA Note.[23] Vault Rooms then eventually cured its payment default on the SBA Note.[24]

There is nothing in the record to suggest, let alone establish, that Bancorp asserted a default of the Stock Pledge Agreement at or about the time Mr. Williams sold his stock in Vault Rooms to Ms. Perkins since Mr. Williams had conveyed his stock to Ms. Perkins without having first obtained Bancorp's prior written consent. Further, there is no credible evidence in the record to controvert Ms. Perkins's testimony that she informed Bancorp of the stock transfer after the transfer had occurred. Thereafter, from August 2017 through approximately August 2021, Vault Rooms reduced the outstanding principal balance owed on the SBA Note from its original principal balance of $855,000 to under $300,000.

C.  **Ms. Perkins decides to resign her position with Vault Rooms and sell her equity interest to Cool Life CRM, Inc.**

As the chief executive of Vault Rooms, Ms. Perkins was required to travel extensively. Between her extensive travel schedule and the pressure of running Vault Rooms, Ms. Perkins's domestic life suffered. Consequently, Ms. Perkins and her husband divorced, and by June 2021, Ms. Perkins and her daughter were living in a recreational vehicle.[25] Ms. Perkins testified that in August 2021, Mr. David Cummings—the CEO of Cool Life CRM, Inc ("*Cool Life*")—a company in the same industry of Vault Rooms—approached Ms. Perkins to purchase her stock in Vault Rooms, and on November 20, 2021, Ms. Perkins sold her stock in Vault Rooms to Cool Life.[26]

---

[23] Perkins testimony at 10:27:41 thru 10:28:06.

[24] *Id.*

[25] Perkins testimony at 10:33:50 thru 10:35:48.

[26] Adv. ECF No. 23, Pl. Ex. 11; *see also* Pl. Exs. 12 and 13; *see also* Perkins testimony at 10:35:45 thru 10:36:50.

5

Ms. Perkins remained as an advisor to Vault Rooms for about eighteen months after the sale of her stock to Cool Life.[27]

Ms. Perkins testified that during the closing of her stock sale to Cool Life, Mr. Cummings's attorney—Ms. Jessica Kelly—stated that she would forward the stock sale documents to Bancorp.[28] Ms. Perkins testified further that from that point forward, Mr. Cummings dealt directly with Bancorp regarding the SBA Note. Ms. Perkins also testified further that in February 2022, she also reached out to Bancorp to confirm that Mr. Cummings was the new contact for Vault Rooms and that Cool Life had purchased her stock in Vault Rooms.[29]

Ms. Perkins and Ms. Mitzi Tamayo—Vice President and Portfolio Officer with Bancorp—each testified that in or around August 2023, they had a conversation about the status of the SBA Loan and the stock sale transaction with Cool Life.[30] They both testified that Ms. Perkins sent to Ms. Tamayo copies of the stock sale transaction documents along with a written explanation of why she had sold her stock to Cool Life.[31]

Ms. Tamayo testified that she has been employed by Bancorp since 2021. Ms. Tamayo testified further that between August 2021 and August 2023 she had only one communication with Ms. Perkins in August 2021 to request copies of financial statements from Ms. Perkins. Ms. Tamayo admitted further, however, that she "was in communication with [Mr. Cummings] several times" between August 2021 and 2023.[32] Ms. Tamayo also confirmed that Bancorp had received

---

[27] Perkins testimony at 10:38:00 thru 10:38:30.

[28] Perkins testimony at 10:41:50 thru 10:42:01; *see also* Perkins testimony at 10:44:37 thru 10:45:12.

[29] Perkins testimony at 10:42:02 thru 10:42:20.

[30] Tamayo testimony at 9:23:20 thru 9:27:35; *see also* Perkins testimony at 10:41:00 thru 10:43:25.

[31] *Id.*, *see also* ECF No. 23, pgs, 4-5 at ¶ 14.

[32] Tamayo testimony at 9:48:00 thru 9:48:50 and 9:56:20 thru 9:57.

6

the communication from Ms. Perkins in February 2022 that Mr. Cummings was a new contact for Vault Rooms.[33] Although the Court found Ms. Tamayo to be a credible witness for the most part, her testimony that Bancorp "first learned" of Ms. Perkins sale of her stock to Cool Life in August 2023 was not persuasive given her many communications with Mr. Cummings going back to August 2021.

**D.    Bancorp sends Vault Rooms a Notice of Default and Demand for Payment**

On January 4, 2024, Bancorp sent a Notice of Default and Demand for Payment as to the SBA Note, requiring the payment default in the amount of $23,292.15 to be cured by January 16, 2024.[34] The default was not cured.[35] Therefore, on February 21, 2024, Bancorp gave a Notice of Acceleration demanding full payment of the SBA Note in the amount of $255,419.65. Vault Rooms, however, failed to pay the full amount owing on the SBA Note.[36]

On March 28, 2024, Bancorp sent Vault Rooms a Demand for Assembly and Surrender of Collateral.[37]

On June 6, 2024, Bancorp brought a state court lawsuit against Ms. Perkins and others. In response, Ms. Perkins filed the above-captioned bankruptcy case. Bancorp then filed the Complaint initiating the above-captioned adversary proceeding.

---

[33] *Id.*

[34] ECF No. 23, pg. 5 at ¶ 16.

[35] *Id.*

[36] *Id.*

[37] Pl. Ex. 14; *see also* ECF No. 23, pg. 5 at ¶ 17.

7

## II. CONCLUSIONS OF LAW

Bancorp contends that its claim against Ms. Perkins in the amount of not less than $262,792.49 as of May 22, 2024[38] should be deemed non-dischargeable under §§ 523(a)(2)(A) and 523(a)(6) of the United States Bankruptcy Code.

### A.  11 U.S.C. § 523(a)(2)(A)—False Pretense, False Representation, or Actual Fraud

A debt may be declared nondischargeable under § 523(a)(2)(A) if it is a debt "for money . . . or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[39] Bancorp contends that (i) Ms. Perkins owes a debt to Bancorp under the Perkins Guaranty; and (ii) Ms. Perkins "represented, covenanted and warranted to Bancorp that until the Stock Pledge Agreement was terminated, or until Bancorp gave its authorization by prior written consent" she would not take any action "regarding the corporate and management structure of Vault Rooms."[40]

#### 1. *False Pretense and False Representation*

The Fifth Circuit distinguishes false pretenses and false representations from "actual fraud" for purposes of § 523(a)(2)(A). False pretenses and false representations require that the creditor prove (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, and (iii) that was justifiably relied upon by the creditor.[41] A debtor's representation related to a future action does not satisfy § 523(a)(2)(A) for a false pretense or false representation unless, at

---

[38] ECF No. 23, pg. 5 at ¶ 18.

[39] 11 U.S.C. § 523(a)(2)(A).

[40] Complaint at pgs. 10-11 at ¶¶ 57 and 58.

[41] *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

the time the representation was made, the creditor can establish that the debtor had no intention of fulfilling the promise or representation.[42]

Therefore, to establish that Ms. Perkins made a false pretense or false representation, Bancorp must prove that (i) Ms. Perkins (and not someone else) made a knowing and false representation; (ii) the false representation described a past or current fact; and (iii) Bancorp justifiably relied on the representation.[43] To satisfy the reliance element, the Supreme Court has held that the degree of reliance required under § 523(a)(2)(A) is justifiable reliance.[44]

In support of its § 523(a)(2)(A) claim, Ms. Tamayo testified that Bancorp is relying upon the undisputed fact that Ms. Perkins transferred her stock in Vault Rooms to Cool Life without having obtained the prior written consent of Bancorp.[45] There is no evidence in the record to suggest that Ms. Perkins made a false pretense or false representation to Bancorp describing a past or current fact upon which Bancorp justifiably relied at the time the SBA Loan, Perkins Guaranty, and Stock Pledge Agreement were executed. Consequently, Bancorp failed to establish that Ms. Perkins made either a false pretense or false representation to Bancorp to satisfy the required elements under § 523(a)(2)(A).

---

[42] *Beshears v. McCool (In re McCool)*, Adv. No. 16-43206, 2019 BL 372248, at *17 (Bankr. N.D. Tex. Sept. 30, 2019) (citing *In re Allison*, 960 F.2d 481, 484 (5th Cir. 1992)); *see also In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) (overruled on other grounds by *Husky Intern. Electronics, Inc. v. Ritz*, 136 S.Ct. 1581 (2016)). *Husky* made clear that no misrepresentation is necessary to establish an "actual fraud" under § 523(a)(2)(A) of the Bankruptcy Code. Courts in the Fifth Circuit continue to follow *Bercier*'s requirement that a "false representation" under § 523(a)(2)(A) must relate to past or current facts. *See, e.g.*, *In re Carter*, No. 17-35082, 2018 WL 6060391, at *23 (Bankr. S.D. Tex. Nov. 19, 2018); *In re Martin*, No. 15-41103, 2017 WL 1316928, at *10 (Bankr. E.D. Tex. Apr. 7, 2017).

[43] *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017).

[44] *Field v. Mans*, 516 U.S. 59, 70–71 (1995).

[45] Tamayo testimony 10:06:10 thru 10:08:47.

## 2. Actual Fraud

To show actual fraud, the creditor must prove that (i) the debtor made a material representation, (ii) the representation was false, (iii) when the representation was made, the debtor knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (iv) the debtor made the representation with the intent that the creditor should act upon it, (v) the creditor acted in reliance on the representation, and (vi) the creditor thereby suffered an injury.[46]

To establish that Ms. Perkins committed actual fraud, Bancorp must prove that (i) Ms. Perkins (and not someone else) made a material representation, (ii) the representation was false, (iii) when Ms. Perkins made the misrepresentation, she knew it was false or she made it recklessly without any knowledge of the truth and as a positive assertion, (iv) Ms. Perkins made the representation with the intent that Bancorp should act upon it, (v) Bancorp acted in reliance on the representation, and (vi) Bancorp thereby suffered an injury.

Again, the only evidence Bancorp offered in support of its § 523(a)(2)(A) claim was Ms. Tamayo's testimony that Bancorp relied upon the undisputed fact that Ms. Perkins transferred her stock in Vault Rooms to Cool Life without having obtained the prior written consent of Bancorp.[47] There is no credible evidence in the record, however, to suggest that Ms. Perkins committed fraud against Bancorp. Consequently, Bancorp failed to establish that Ms. Perkins committed a fraud upon Bancorp to satisfy the required elements under § 523(a)(2)(A).

Based on the Court's review and analysis of the credible evidence in the record, the Court finds and concludes that Bancorp failed to offer adequate credible evidence to satisfy its burden to

---

[46] *See Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

[47] Tamayo testimony 10:06:10 thru 10:08:47.

establish the required elements necessary for a finding that Ms. Perkins made either a false pretense, a false representation, or actual fraud as required under 11 U.S.C. § 523(a)(2)(A). Therefore, for all the reasons detailed above, Bancorp's count in the Complaint and Joint Pretrial Order based on *§ 523(a)(2)(A)* is **DENIED** and **DISMISSED**.

**B.     11 U.S.C. § 523(a)(6)—Willful and Malicious Injury**

A debt may be declared nondischargeable under § 523(a)(6) "for willful and malicious injury by the debtor to another entity or to the property of another entity."[48] Section 523(a)(6) requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[49] In the Fifth Circuit, "an injury is 'willful and malicious' where there is either (1) an objective substantial certainty of harm arising from a deliberate or intentional action or (2) a subjective motive to cause harm by a party taking a deliberate or intentional action."[50] In addition, "the debtor must have intended the actual injury that resulted."[51]

Whether a contractual debt may be discharged under § 523(a)(6) "depends upon the knowledge and intent of the debtor at the time of the breach, rather than whether conduct is classified as a tort or falls within another statutory exception to discharge."[52] Courts "may infer that a debtor acted with malice, for purposes of § 523(a)(6), if the debtor acts in a manner which one knows will place the lender at risk."[53]

---

[48] 11 U.S.C. § 523(a)(6).

[49] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis omitted).

[50] *Ward Family Found. v. Arnette* (*In re Arnette*), 454 B.R. 663, 700 (Bankr. N.D. Tex. 2011) (citing *In re Miller*, 156 F.3d at 604–06).

[51] *Texas v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998).

[52] *Williams v. Int'l Bhd. of Elec. Workers Local 520* (*In re Williams*), 337 F.3d 504, 510 (5th Cir. 2003).

[53] *SE Prop. Holdings, L.L.C. v. Green* (*In re Green*), 968 F.3d 516, 524–25 (5th Cir. 2020).

Moreover, the Fifth Circuit has held, "the dischargeability of contractual debts under Section 523(a)(6) depends upon the knowledge and intent of the debtor at the time of the breach."[54] Thus, the injury must give rise to the debt, not vice versa.[55]

To prevail under § 523(a)(6) Bancorp must establish that (i) Ms. Perkins (as opposed to some other person or entity) knowingly breached a clear contractual obligation; (ii) at the time of such breach, there was either (a) an objective substantial certainty of harm arising from a deliberate or intentional action or (b) a subjective motive to cause harm by a party taking a deliberate or intentional action; (iii) the injury was not sufficiently justified under the circumstances to render it not willful and malicious; and (iv) that the debt to be excepted from discharge arose from such willful and malicious injury.

Bancorp contends that Ms. Perkins willfully breached the terms of Stock Pledge Agreement when she conveyed her stock in Vault Rooms to Cool Life. The mere existence of such a breach, however, is not enough for a § 523(a)(6) claim. Although the Fifth Circuit has suggested that "a knowing breach of a clear contractual obligation *that is certain to cause injury* may prevent discharge under § 523(a)(6)."[56] Such a breach, however, must be supported with "explicit evidence that a debtor's breach was intended or substantially certain to cause the injury to the creditor."[57] There is no credible evidence in the record to suggest that Ms. Perkins's technical breach of the Stock Pledge Agreement "was intended or substantially certain to cause" injury to Bancorp.

---

[54] *Id.* at 510; *see also GSY Corp. v. Hazan (In re Hazan)*, No. 1-15-41018-nhl, 2018 BL 354596, at *10 (Bankr. E.D.N.Y. Sept. 27, 2018) ("Section 523(a)(6) operates similarly to § 523(a)(2)(A) when applied to conduct occurring after an initial debt is incurred.").

[55] *Jou v. Adalian (In re Adalian)*, 481 B.R. 290, 298 (Bankr. M.D. Pa. 2012) (debt was not rendered nondischargeable where it was incurred before the alleged injurious actions); *see also Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 6 (6th Cir. 2004); *Cordeiro v. Kirwan (In re Kirwan)*, 558 B.R. 9, 14 (Bankr. D. Mass. 2016).

[56] *Williams*, 337 F.3d at 511 (emphasis added).

[57] *Id.*

Rather, the credible evidence suggests that Bancorp was not injured when (i) Mr. Williams sold his stock to Ms. Perkins in 2017 in technical violation of the Stock Pledge Agreement; or (ii) when Ms. Perkins sold her stock to Cool Life in 2021 in technical violation of the Stock Pledge Agreement. In both cases, Bancorp became aware of the technical default of the Stock Pledge Agreement but took no action or asserted a default. Further, there is no credible evidence in the record to establish that Bancorp was injured by the technical defaults of the Stock Pledge Agreement.

Based on the Court's review and analysis of the evidence, the Court finds and concludes that Bancorp failed to offer adequate credible evidence to satisfy its burden to establish that its debt may be declared nondischargeable under § 523(a)(6) due to a willful and malicious injury caused by Ms. Perkins. Therefore, for all the reasons detailed above, Bancorp's count in the Complaint and Joint Pretrial Order based on *§ 523(a)(6)* is **DENIED** and **DISMISSED**.

### III. CONCLUSION

For the forgoing reasons, the Court finds and concludes that Bancorp failed to satisfy its burden to establish that Ms. Perkins's debt to Bancorp should be declared nondischargeable under §§ 523(a)(2)(A) or 523(a)(6). Therefore, each of the claims and causes of action contained in the Complaint and Joint Pretrial Order are ***DENIED***.

The Court will enter a separate final judgment consistent with these Findings of Fact and Conclusions of Law.

### END OF FINDINGS OF FACT AND CONLCUSIONS OF LAW ###